JOHN J. FLYNN'S CASE.

Suffolk.    April 15, 1975. — May 28, 1975.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Workmen's Compensation Act,* Specific compensation: *Statute,* Construction.

An employee, whose work-related injury to one eye resulted in a 40% loss of function of both eyes due to his inability to obtain single binocular vision, was not entitled to an award of workmen's compensation under G. L. c. 152, § 36 (b), as amended through St. 1966, c. 584, which provided compensation "for the reduction to twenty-seventieths of normal vision in both eyes;" the employee was entitled, however, to an award under § 36 (d) "for injury to one eye which produces an inability which is not correctible to use both eyes together for single binocular vision." [301-304]

CERTIFICATION to the Superior Court of a decision of the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Good,* J.

The case was submitted on briefs.

*Christian J. Stier* for the insurer.

*Thomas E. Finnerty & William M. Bulger* for the employee.

KEVILLE, J.    A single member of the Industrial Accident Board awarded the employee specific compensation under G.L. c. 152, § 36 (b), as amended through St. 1966, c. 584, which provided for the payment of such compensation at the rate of $25 a week for 500 weeks "[f]or the reduction to twenty-seventieths of normal vision in both eyes, with

Flynn's Case.

glasses." The single member's decision was adopted and affirmed by the reviewing board and a judge of the Superior Court entered a decree which, in its fourth paragraph, awarded compensation in accordance with the decisions of the single member and the reviewing board. In his appeal, the insurer challenges that portion of the decree.

The award under § 36(b) was based on evidence to the following effect. The employee had sustained a work-related injury to his right eye. Although his left eye was not injured, the injury to his right eye resulted in his inability, with or without glasses, to coordinate the use of his eyes so as to obtain single binocular vision. The loss of function on that account in his eyes used together with glasses was about forty percent.

The single member found "that the employee has a 40% loss of function of both eyes due to the double vision." Relying on the fact that a reading of twenty-seventieths on a type of eye chart in common use reflects visual acuity in the eye being tested of thirty-six percent below normal (*Pizzano's Case,* 331 Mass. 380, 381 [1954]), the single member concluded that the employee's forty percent loss of function brought him within the scope of § 36(b). That conclusion, and so much of the decision and decree as were based upon it, were erroneous.

The eye-injury provisions of § 36 in effect at the time of the employee's injury[1] appeared in (a) through (e) which, together with the preamble to § 36, are set out in the margin.[2] For any injury specified in that section an em-

[1] Section 36 was subsequently rewritten by St. 1972, c. 741, § 1. While the statutory language on which the present case turns remained substantially intact, the paragraphs were rearranged and redesignated, and the payment formula revised. All references to § 36 in the text are to the version, as amended through St. 1966, c. 584, by which the present case is governed.

[2] "In case of the following specified injuries, the sum of twenty-five dollars a week shall be paid, in addition to all other compensation, for the following periods:

(a) For the loss by enucleation or otherwise, or the total loss of use of both eyes, a period of five hundred weeks.

ployee was entitled to $25 a week for a number of weeks varying according to the nature and severity of the injury. Under (a) and (b), the payment period was 500 weeks for the loss of both eyes, the total loss of their use or a "reduction to twenty seventieths of normal vision" therein. Under (c) and (d) the payment period was only 200 weeks for a corresponding impairment of vision in one eye alone, and for another injury described in (d) to be discussed later in this opinion. Under (e) lesser payment periods were applicable to lesser eye injuries according to a prescribed formula.

A predecessor of § 36, St. 1911, c. 751, Part II, § 11 (a) and (b), as amended by St. 1912, c. 571, § 2, provided one range of specific compensation for any eye injury which caused a "reduction to one tenth of normal vision" in both eyes and a lesser range for any eye injury causing such a reduction in one eye. While the 1911 statute and subsequent amendments thereto made no express provision for an injury causing double vision, an employee suffering such an injury to his right eye was held to be entitled to compensation under that statute (as appearing in St. 1914, c. 708, § 6) for the injury to one eye alone. *O'Brien's Case,* 228 Mass. 211, 212-213 (1917).

While the court did not discuss the alternative of compensating O'Brien in the larger amount then payable for an injury causing "the reduction to one-tenth of normal vision in *both* eyes" (emphasis supplied) under § 11 (a) of

---

(b) For the reduction to twenty seventieths of normal vision in both eyes, with glasses, a period of five hundred weeks.

(c) For the reduction to twenty seventieths of normal vision in one eye, with glasses, a period of two hundred weeks.

(d) For the loss by enucleation or otherwise, or the total loss of use of one eye, or for injury to one eye which produces an inability which is not correctible to use both eyes together for single binocular vision, a period of two hundred weeks.

(e) For any permanent but partial reduction in either the acuity or field of vision of either eye, such period of weeks in proportion to the period applicable in the event of total loss, total loss of use, or the reduction to twenty seventieths of normal vision of one or both eyes as the partial reduction bears to such total loss, total loss of use or reduction to twenty seventieths of normal vision."

the 1911 statute, the *O'Brien* case implies that such enhanced compensation would not have been available. We think that the implied holding of the *O'Brien* case is equally applicable to the statute involved in the present case, and, but for an amendment to § 36 in 1959, that the employee here would be entitled to recover compensation for the injury to his right eye for 200 weeks under (c) but not for 500 weeks under (b).

The 1959 amendment to § 36 inserted in (d) the provision which granted specific compensation for 200 weeks "for injury to one eye which produces an inability which is not correctible to use both eyes together for single binocular vision." St. 1959, c. 230. The 1959 amendment represented a liberalization of § 36 in that it permitted specific compensation for such an injury regardless of the severity of the double vision, so long as it was not correctible. The injury in the present case clearly falls within that category and should have been dealt with accordingly.

In our view the 1959 amendment was the product of a legislative determination that any type of uncorrectible double vision caused by an injury to one eye should be treated as equivalent to the loss of that eye. Compare *Pizzano's Case,* 331 Mass. at 382. We are not persuaded by the contention, based on medical testimony at the hearing before the single member, that the loss of function cannot be attributed to either eye in the double vision context because it is the combination of both eyes that produces it. If that position were valid there could never have been recovery under § 36(c)[3] or its predecessors for an injury resulting in double vision. As we have already noted, such recovery was allowed in *O'Brien's Case, supra,* at 212-213.

Moreover, to regard the employee's injury as subject to (b) of § 36 would bring that paragraph into conflict with the double vision clause of (d). "[S]tatutes alleged to be inconsistent with each other ... must be so construed as to give reasonable effect to both, unless there be some positive repugnancy between them." *Goldsmith* v. *Reliance Ins. Co.*

---

[3] See n. 2.

353 Mass. 99, 102 (1967), and cases cited. *Gosselin* v. *Gosselin*, 1 Mass. App. Ct. 146, 148 (1973).

The fourth paragraph of the decree is to be modified by striking from the first sentence the words "section 36B at the rate of Twenty-Five ($25) Dollars per week for a period of five hundred (500) weeks" and substituting the words "section 36(d) at the rate of Twenty-Five ($25) Dollars per week for a period of two hundred (200) weeks," and by striking from the second sentence the words "Thirteen Thousand Six Hundred ($13,600)" and substituting the words "Six Thousand One Hundred ($6,100)." As so modified the decree is affirmed.

*So ordered.*